1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

2

3

4

5

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice* forthcoming)
140 Broadway, Suite 4667
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

6

7

8

9

*Attorneys for Plaintiff and the Putative Class*

10

**UNITED STATES DISTRICT COURT**

11

**EASTERN DISTRICT OF CALIFORNIA**

12

13

14

15

16

17

18

| | |
|---|---|
| BRANDON WONG, individually and on behalf of all other persons similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| IOVATE HEALTH SCIENCES U.S.A. INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

19

20

21

22

23

24

25

26

27

28

Plaintiff Brandon Wong ("Plaintiff") brings this action on behalf of himself and all others similarly situated against defendant Iovate Health Sciences U.S.A. Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on his personal knowledge.

**INTRODUCTION**

1.      Defendant formulates, manufactures, advertises, and sells its "Muscletech" dietary supplements which are designed to promote muscle growth, fat loss, wellness, and performance (the "Products").[1] Defendant markets and sells the Products throughout the United States, including in California. In so doing, Defendant markets its Products in a systematically misleading manner by misrepresenting that the Products have specific amounts of protein that they do not contain.

2.      Because Defendant's sales are driven by consumers seeking to increase their protein intake, Defendant prominently displays the total protein content of its Products' front labels. Despite this, the Products do not contain the advertised protein amounts (which can only be obtained by adding "milk"). Plaintiff and those similarly situated ("Class Members") accordingly suffered an injury in fact as a result of Defendant's misleading and deceptive practices set forth herein.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendant. This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

4.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Plaintiff is a citizen of California and resides in this District, and because Plaintiff purchased the

---

[1] Defendant's Products include its "100% Mass Gainer," "Mass Tech Elite," and "Mass Tech Extreme 2000" along with their flavor variations.

Products in this District. Moreover, Defendant purposefully availed itself of this District through its distribution, advertisement, and sale of the Products, which are the subject of the present complaint in this District.

**THE PARTIES**

5.     Plaintiff Brandon Wong is a citizen of California who resides in Sacramento, California. Plaintiff Wong purchased the Products for his personal use during the applicable statute of limitations in Sacramento, California. Plaintiff Wong's most recent purchase was Defendant's 100% Mass Gainer which he purchased at a Walmart store for approximately $27.98 on or around the fall of 2023. Prior to purchasing the Products, Plaintiff Wong saw and read the 100% Mass Gainer Product's packaging which stated that it provides "60g[rams] PROTEIN." Plaintiff Wong relied on this representation by believing that the Products indeed contained the amount of protein represented therein. Had Plaintiff Wong known that the Products' representations were false, he would not have purchased the Products or would have paid less for them. Additionally, in making his purchases, Plaintiff Wong paid a price premium because the price of Defendant's Products was inflated as a result of the false and misleading claims regarding their nutritional value.

6.     In addition, in making his purchases, Plaintiff Wong did not see any statement alerting him to the fact that he would need to purchase and add "milk" to obtain the Products' protein representations. Those omissions were material to Plaintiff Wong because had he known that the Product's protein representations were contingent on adding "milk," he would not have relied on them or believed those representations were comparable to other protein supplements in the market. As such, Plaintiff Wong would not have purchased the Products or would have paid substantially less for them had he known that the Products; protein representations were based on the additional purchase and addition of "milk."

7.     Defendant Iovate Health Sciences U.S.A. Inc., ("Iovate USA") is a Delaware corporation with its principal place of business in Wilmington, Delaware. At all times relevant to this Complaint, Iovate USA has advertised, marketed, distributed, or sold the Products to consumers throughout the United States and the State of California. Defendant has sold the

Products directly to consumers via the internet and through third-party retail stores throughout the United States, including this District. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

## FACTUAL ALLEGATIONS

8.    It is axiomatic that the amount of reported protein contained within Defendant's Products is material to any consumer seeking to purchase a meal replacement. Accordingly, Defendant fortifies its Products with Whey Protein Concentrate, Whey Protein Isolate, and Hydrolyzed Whey Protein Isolate. These protein sources differ from raw milk because they are processed to include a higher concentration of protein and remove much of the fats and carbohydrates traditionally found in milk and other naturally occurring beverages. Thus, the type of concentrated protein within the Products is particularly prized.

9.    Defendant labels and advertises all of its Products in a manner that highlights the amount of added protein contained within. The Products uniformly list their purported protein content on their front label, directly below their names. Such representations constitute an express warranty regarding the Products' protein content. The Products' front labels plainly state that they are fortified with 60 grams or 80 grams of protein, as depicted below:

//

//

//

//

//

//

//

//

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28








10.    Despite Defendant's representations, however, the Products only contain 44 grams of protein (instead of 60 grams) or 60 to 63 grams of protein (instead of 80), depending on the Product. Unbeknownst to Plaintiff and the Class Members, the other 16, 17, or 20 grams (when opting for one serving with water) of missing protein, depending on the Product, are accounted for by their dual nutrition facts tables located on the back labels of the Products which requires consumers to add "16 fl. oz. of Skim Milk," or "20 fl. oz. of Skim Milk," (sold separately) to obtain the Products' full advertised nutritional protein values. The back labels of the Products are depicted below:

//

//

//

//

//

//







11.     Defendant's deceptive conduct is further underscored by the fact that similar protein powder products with similar protein content representations are true to their representations:










12.     Pursuant to 21 U.S.C. § 321(f), Defendant's Products constitute a "food" regulated by the Federal Food, Drug, and Cosmetic Ac ("FDCA"), 21 U.S.C. § 301, *et seq.*, and its implementing regulations promulgated by the U.S. Food and Drug Administration ("FDA"). As pertinent here, the FDA prohibits manufacturers from making a claim on the front of a product's package about the "amount or percentage of a nutrient," such as protein, if the statement is "false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). If it is, then "it may not be made on the label." 21 C.F.R. § 101.13(b). This is true even if the same amount appears in the nutrition facts panel. 21 C.F.R. § 101.13(c). The FDA explained in promulgating section 101.13(i) that the regulation was necessary "since many consumers have a limited knowledge and understanding of the amounts of nutrients that are recommended for daily consumption," which means that "a statement declaring that the product contained a specified amount of a nutrient could be misleading. By its very presence, such a statement could give consumers who were unfamiliar with the dietary recommendations the false impression that the product would assist them in maintaining healthy dietary practices relative to the amount of the nutrient consumed when it, in fact, would not." 56 Fed. Reg. 60421. This is particularly true for voluntary nutrient declarations made on the front panel of products, which as the FDA indicated, "is viewed by the agency as an effort to market the food as a significant source of nutrients." 56 Fed. Reg. 60366.

13.     While the FDA permits manufacturers to include a separate "as prepared" column in the Nutrition Facts panel for food "commonly combined with other ingredients," the "type and quantity of the other ingredients to be added to the product" and "the specific method of cooking or other preparation" must be "**specified prominently on the label.**" 21 C.F.R. § 101.9(h)(4). Although this regulation applies only to a manufacturer's insertion of a dual nutrition facts panel—rather than voluntary nutrient declarations—Defendant's failure to even satisfy this requirement illustrates the highly misleading nature of its protein representations.

14.     Specifically, although the Products contain certain symbols next to the protein representations, those symbols are barely legible, insufficiently offset by the much larger and prominent text on the Products' labels (including the protein representations), and are lost within

1   the various other symbols contained elsewhere on the Products' front and side labels. Furthermore,

2   even if the Products symbols were sufficiently conspicuous to catch the unsuspecting buyers'

3   attention (they are not) consumers are not required to search the entire Products' packaging to find

4   where they lead to—buried at the bottom of the Products' side labels—instead of the back label of

5   the Products where a consumer could possibly expect to find additional information about the

6   Products' nutritional contents. Finally, the disclosures connected to the symbols fail to cure the

7   Products' protein misrepresentations because, aside from being insufficiently conspicuous, they fail

8   to specify the "quantity of the other ingredients to be added to the product." 21 C.F.R. §

9   101.9(h)(4). Instead, these disclaimers merely state "when mixed with two cups of skim milk"

10   without informing consumers of the *quantity* of milk and the number of scoops necessary to arrive

11   at the advertised protein misrepresentations. The side labels of the Products are depicted below:



**When mixed with two cups of skim milk





**When mixed with two cups of skim milk





**with 20 oz. of skim milk

15. Defendant's false, deceptive, and misleading label statements violate 21 U.S.C. § 343(a)(1) and the so-called "little FDCA" statutes adopted by many states[2], which deem food misbranded when "its labeling is false or misleading in any particular."

16. Defendant's false, deceptive and misleading label statements are unlawful under

---

[2] *See, e.g.*, The Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code §§109875, et seq

state Unfair and Deceptive Acts and Practices Statutes and/or Consumer Protection Acts, which prohibit unfair, deceptive or unconscionable acts in the conduct of trade or commerce.

17.    California has expressly adopted the federal food labeling requirements as its own. Thus, a violation of federal food labeling laws is an independent violation of California law and is actionable as such.

18.    The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Complaint.

19.    Defendant intended for Plaintiff and the Class Members to be misled.

20.    Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the Class Members who suffered an injury in fact and lost money or property as a result of Defendant's wrongful conduct.

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action on behalf of himself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

22.    The class periods shall be defined from the date of the filing of this Complaint, back to any such time the Court deems appropriate.

23.    Plaintiff seeks to represent all persons in California who purchased Defendant's Products (the "Class").

24.    The Class does not include (1) Defendant, its officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

25.    Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

26.    ***Community of Interest***: There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

27.     ***Numerosity***: While the exact number of members of the Class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Class number in the millions. The precise number of the members of the Class and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Class may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

28.     ***Existence and predominance of common questions of law and fact***: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individuals of the Class. These common legal and factual questions include, but are not limited to:

(a)     Whether Defendant's representations that the Products contain 60 or 80 grams of protein, depending on the Product, are false and misleading in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*

(b)     Whether Plaintiff and the members of the Class have suffered damages as a result of Defendant's actions and the amount thereof;

(c)     Whether Plaintiff and the members of the Class are entitled to injunctive relief to enjoin Defendant from further engaging in these wrongful practices; and

(d)     Whether Plaintiff and the members of the Class are entitled to attorney's fees and costs.

29.     ***Typicality***: The claims of the named Plaintiff are typical of the claims of other members of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Product, and suffered a loss as a result of those purchases.

30.     ***Adequacy***: Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate

representative of the Class because he has no interests which are adverse to the interests of the members of the Class. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel.

31.    ***Superiority***: A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)    The expense and burden of individual litigation makes it economically unfeasible for members of the Class to seek to redress their claims other than through the procedure of a class action;

(b)    If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members of the Class to seek to redress their claims other than through the procedure of a class action; and

(c)    Absent a class action, Defendant likely will retain the benefits of its wrongdoing, and there would be a failure of justice.

**CAUSES OF ACTION**

**COUNT I**
**Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500, et seq.**
**(On Behalf of Plaintiff and the Class)**

32.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

33.    The FAL makes it "unlawful for any person…to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

34.    Defendant committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of its products representing on the Products' packaging that the Products contain 60 grams or 80 grams of protein, depending on the Product. In so doing, Defendant omitted that the Products: (1) only contain 44, 60, or 63 grams of protein (per one serving with water); and (2) that the other 16, 17, or 20 grams (when opting for one serving with water) of missing protein are accounted for by the dual nutrition facts tables located on the back labels of the Products which requires consumers to add "16 fl. oz. of Skim Milk," or "20 fl. oz. of Skim Milk," (sold separately) to obtain the Products' full advertised nutritional protein values.

35.    Defendant knew or should have known that its advertising claims are misleading and/or false.

36.    Defendant knew or should have known, through the exercise of reasonable care, that its representations were false and misleading and likely to deceive consumers and cause them to purchase Defendant's Products.

37.    Defendant's wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

38.    Plaintiff and the Class Members seek restitution, injunctive relief, attorneys' fees, and all other relief that the Court deems proper.

39.    Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have

grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the FAL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

40.     Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from his purchase of the Products is determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Products, Plaintiff would be left without the parity in purchasing power to which he is entitled.

<u>COUNT II</u>
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code § 1750, *et seq.***
**(On Behalf of Plaintiff and the Class)**

41.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

42.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

43.     Civil § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

44.     Civil § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

45.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

46.     Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

47.     On March 13, 2024, Plaintiff notified Defendant in writing, by certified mail, of the violations alleged herein and demanded that Defendant remedy those violations pursuant to Cal. Civ. Code § 1782.

48.     Plaintiff and the Class Members presently seek only injunctive relief under this Count. If Defendant fails to remedy the violations alleged herein within 30 days of receipt of Plaintiff's notice, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA.

### COUNT III
**Violation of California's Unfair Competition Law, ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the Class)**

49.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

50.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200.  A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

51.     Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*

52.     Defendant has violated the UCL's proscription against engaging in Unlawful Business Practices as a result of its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.* CLRA, Cal. Civ. Code § 1750, *et seq.*; and the Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code §§109875, *et seq.*

53.     Defendant has also violated the UCL's proscription against engaging in Unfair Business Practices. Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Defendant's deceptive business model has led consumers to purchase the Products over other comparable dietary supplements that properly represent their nutritional value without the need of purchasing other products (*i.e.*, "milk"). Such injury is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on the Products' labels, and thus also its omissions, consumers could not have reasonably avoided such injury. *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act). Furthermore, Defendant's packaging and sale of the Products is also unfair because also violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the FDA and The Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code.

54.     Finally, Defendant has further violated the UCL's proscription against engaging in Fraudulent Business Practices. Defendant's claims, omissions, and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public.

55.     Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class Members seek restitution, injunctive relief, attorneys' fees, and all other relief that the Court deems proper.

56.     Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally

certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

57.    Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from his purchase of the Products are determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Products, Plaintiff would be left without the parity in purchasing power to which he is entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as a representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)    For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

(d)    For an order of restitution and all other forms of equitable monetary relief;

(e)    For prejudgment interest on all amounts awarded;

(f)    For injunctive relief as pleaded or as the Court may deem proper; and

(g)    For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: March 21, 2024                                   Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    */s/ L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice* forthcoming)
140 Broadway, Suite 4667
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Brandon Wong in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the transaction alleged in the Complaint occurred in Sacramento County.  Plaintiff Young alleges he purchased the Product in this County.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California, this 21st day of March, 2024.


_____*/s/ L. Timothy Fisher*_____
L. Timothy Fisher