UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON WONG,<br><br>  Plaintiff,<br><br>  v.<br><br>IOVATE HEALTH SCIENCES U.S.A. INC.,<br><br>  Defendant. | No. 2:24-cv-00901-DAD-CKD<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND<br><br>(Doc. No. 12) |

This matter is before the court on defendant Iovate Health Sciences U.S.A. Inc.'s motion to dismiss plaintiff's complaint. (Doc. No. 12.) On August 2, 2024, defendant's motion was taken under submission pursuant to Local Rule 230(g). (Doc. No. 18.) For the reasons explained below, the court will grant defendant's motion to dismiss with leave to amend.

**BACKGROUND**

On March 21, 2024, plaintiff Brandon Wong filed his complaint initiating this false advertising class action in this court. (Doc. No. 1.) In his complaint, plaintiff alleges the following.

In fall of 2023, plaintiff purchased from a Walmart store a product called "100% Mass Gainer," a dietary supplement in the form of a protein powder, produced by defendant. (*Id.* at ¶ 5.) This product is part of a line of products called the "Muscletech" dietary supplements ("the

1

Products"), which also include "Mass Tech Elite" and "Mass Tech Extreme 2000." (*Id.* at ¶ 1.) Plaintiff has purchased each of the Products at various times, but purchased only the "100% Mass Gainer" product in the fall of 2023. (*Id.* at ¶ 5.) Prior to purchase, plaintiff read the packaging which stated that the supplement provided 60 grams of protein per serving. (*Id.*) Plaintiff did not see any statement on the packaging alerting him to the fact that he would need to purchase and add milk to the supplement to reach the Product's advertised protein content of 60 grams of protein. (*Id.* at ¶ 6.) Without adding milk, the "100% Mass Gainer" dietary supplement which plaintiff purchased contained only 44 grams of protein per serving rather than 60 grams. (*Id.* at ¶ 10.)

Defendant produces the Products and in advertising for all of them highlights the amount of protein contained within. (*Id.* at ¶ 9.) Each of the Products contains fewer grams of protein in a serving than what is stated on the front label of the packaging because the Products require the consumer to add some quantity of milk. (*Id.* at ¶ 10.) Other protein powders not produced by defendant have packaging that prominently advertises the amount of protein contained within a serving of the powder, but only include the protein content from the powder itself. (*Id.* at ¶ 11.) Defendant's Products all contain a disclaimer on the front that the protein content assumes the addition of milk, though those disclaimers and the associated asterisk symbols appear in small font on the front of the packaging. (*Id.* at ¶ 14.) Plaintiff would not have purchased the product, or would have paid less for them, had he been aware that the protein powder contained less protein than 60 grams of protein per serving without adding milk. (*Id.* at ¶ 5.)

In his complaint, plaintiff includes photographs of the front and back of several of defendant's Products' packaging. (*Id.* at ¶¶ 9–10, 14.) As reflected in those photographs, the label of the Products represents that it contains a certain amount of protein which is accompanied by a double asterisk. (*Id.*) Those double asterisks then refer to a disclaimer that the protein content is only present when the powder is mixed "with" an amount of "skim milk." (*Id.*) Photos of the back of the packaging show that the protein content is reduced below the advertised amount appearing on the front of the packaging when the powders are mixed with water instead. (*Id.* at ¶ 10.)

2

1    Plaintiff seeks to represent a class of all persons in California who have purchased
2    defendant's Products.  (*Id.* at ¶ 23.)  On behalf of himself and the class, plaintiff brings three
3    claims under California law:  (1) violation of California's False Advertising Law ("FAL"),
4    California Business & Professions Code §§ 17500, *et seq.*; (2) violation of California's
5    Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; and (3)
6    violation of California's Unfair Competition Law ("UCL"), California Business and Professions
7    Code §§ 17200, *et seq.*  (*Id.* at ¶¶ 32–57.)  Plaintiff seeks restitution and attorneys' fees as
8    equitable relief pursuant to his first and third claims.  (*Id.* at ¶¶ 38, 55.)  Plaintiff seeks injunctive
9    reliefs as to all claims.  (*Id.* at ¶¶ 38, 48, 55.)

10   On May 28, 2024, defendant filed the pending motion to dismiss plaintiff's complaint.
11   (Doc. No. 12.)  On July 2, 2024, plaintiff filed an opposition and on August 2, 2024, defendant
12   filed its reply thereto.  (Doc. Nos. 16, 17.)

**LEGAL STANDARD**

**A.     Motion to Dismiss Pursuant to Rule 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated on other grounds by DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019).  However, the court need not

3

assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**B.      Pleading Fraud Pursuant to Rule 9(b)**

A complaint alleging fraud must also satisfy heightened pleading requirements. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003)). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess*, 317 F.3d at 1107.

"Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124 (citation and internal quotation marks omitted). To satisfy the particularity standard of Rule 9(b), the plaintiff must allege the "'who, what, when, where, and how' of the misconduct charged." *Id.* (citing *Vess*, 317 F.3d at 1106).

/////

/////

**DISCUSSION**

**A.     Injunctive Relief as to All Claims**

In moving to dismiss plaintiff's claim brought under the CLRA, defendant argues that plaintiff lacks standing to pursue injunctive relief and that his claim should be dismissed as it seeks only injunctive relief. (Doc. No. 12-1 at 9.) Plaintiff "concedes his request for injunctive relief" as to all his claims and clarifies that he now seeks only equitable relief. (Doc. No. 16 at 7.) Thus, there appears to be no disagreement between the parties that plaintiff cannot seek injunctive relief. The court also agrees with defendant's argument that plaintiff's allegations are not sufficient to state a cognizable claim for injunctive relief because plaintiff has not alleged future harm. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) (holding that a plaintiff seeking injunctive relief against false advertising must allege future harm and may do so by alleging they will be unable to rely on the product's advertising or that they may purchase the product again in the future believing the product has improved).

Accordingly, the court will grant defendant's motion to dismiss plaintiff's claims for injunctive relief sought pursuant to the CLRA, FAL, and UCL. Because injunctive relief is the only relief plaintiff seeks pursuant to his CLRA claim, the court will grant defendant's motion to dismiss plaintiff's CLRA claim. (*See* Doc. No. 1 at ¶ 48) ("Plaintiff and the Class Members presently seek only injunctive relief under [the CLRA].")

**B.     False Advertising Law Claim**

Defendant argues first that plaintiff's FAL claim must be dismissed because he has not alleged that he lacks an adequate remedy at law and therefore is not entitled to equitable relief. (Doc. No. 12-1 at 11.) Defendant also contends that plaintiff has not sufficiently alleged particular facts to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). (*Id.* at 18–20.) Defendant further argues that plaintiff has not sufficiently alleged facts to state a cognizable claim for relief under the FAL because he has not adequately alleged that a reasonable consumer would be deceived by the Products' packaging. (*Id.* at 14–17.) The court will analyze each of these arguments advanced by defendant in turn.

/////

1. <u>Availability of Equitable Relief</u>

Before the court can consider the merits of an equitable claim, it must determine whether it has equitable jurisdiction. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022) ("Equitable jurisdiction is distinct from subject matter jurisdiction, although both are required for a federal court to hear the merits of an equitable claim.") (citing *Schlesinger v. Councilman*, 420 U.S. 738, 754 (1975)). "For a district court to have equitable jurisdiction, and thus entertain a request for equitable relief, the plaintiff must have no adequate legal remedy." *Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761, 768 (N.D. Cal. 2022) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)).

Defendant argues that plaintiff's complaint must be dismissed because he seeks only equitable relief as to his FAL claim but has not sufficiently alleged that he lacks an adequate legal remedy under the CLRA. (Doc. No. 12-1 at 11.) Plaintiff argues that his allegation in support of his FAL claim— namely that he lacks an adequate remedy at law—is sufficient to invoke the court's equitable jurisdiction. (Doc. No. 16 at 7–8.)

Only equitable relief is available under the FAL and UCL, though damages are available under the CLRA. *Gomez v. Jelly Belly Candy Co.*, No. 17-cv-00575-CJC-FFM, 2017 WL 8941167, at *1 (C.D. Cal. Aug. 18, 2017). A plaintiff seeking equitable relief must "establish that she lack[s] an adequate remedy at law[.]" *Sonner*, 971 F.3d at 844. "For this reason, courts generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole." *Rodriguez v. FCA US LLC*, No. 8:22-cv-01445-FWS-JDE, 2023 WL 3150075, at *3 (C.D. Cal. Mar. 21, 2023); *see also Ibarra v. Pharmagenics LLC*, 660 F. Supp. 3d 914, 922 (C.D. Cal. 2023) ("In order to assert a claim for equitable relief, the complaint must allege that the plaintiff lacks an adequate legal remedy.") (internal quotation marks omitted).

Plaintiff argues that it is sufficient at the pleading stage to explicitly allege that he lacks an adequate legal remedy. (Doc. No. 16 at 7–8.) District courts appear divided as to whether a plaintiff is required to plead specific facts as to the lack of adequate legal remedy. *See Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 839–40 (E.D. Cal. 2024) (discussing the split among district

/////

6

1  courts in the Ninth Circuit as to the applicable pleading standard in assessing allegations of the
2  lack of an adequate remedy at law).
3      The court is persuaded that the more liberal pleading standard, employed by the majority
4  of judges in the Northern District of California and by judges in this district, is the appropriate
5  standard to be employed and adopts the reasoning as set out by the district court in *Murphy v.*
6  *Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111 (N.D. Cal. 2023):

> A number of district court cases since *Sonner* have concluded that it has minimal application at the pleading stage. In *Nacarino v. Chobani, LLC,* No. 20-cv-7437-EMC, 2022 WL 344966, at *9–10 (N.D. Cal. Feb. 4, 2022), Judge Chen explained that "*Sonner* teaches that a plaintiff, on the eve of trial, cannot create an inadequacy of a legal remedy by eliminating its availability by taking volitional action," but declined, in the case before him, to dismiss the plaintiff's equitable restitution claim at the motion to dismiss stage. Judge Chen discussed approvingly *Johnson v. Trumpet Behavioral Health LLC*, [No. 3:21-cv-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022)], in which Judge Orrick explained "because *Sonner* was decided at a later posture, I agree with the plaintiffs that, if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case . . . [and that] it is too early to determine whether the plaintiffs' legal remedies will ultimately be adequate so it makes sense to defer this determination."

*Murphy*, 651 F. Supp. 3d at 1129 (holding that the plaintiffs' allegation that they had no adequate legal remedy and that equitable remedies were more certain to provide relief than legal remedies was sufficient to satisfy the *Sonner* pleading standard); *see also Valiente v. Simpson Imps., Ltd.*, 717 F. Supp. 3d 888, 907 (N.D. Cal. 2024) (same); *Vance v. Church & Dwight Co., Inc.*, No. 2:22-cv-000444-MCE-KJN, 2023 WL 2696826, at *4 (E.D. Cal. Mar. 29, 2023) (holding that an allegation that class members lack an adequate remedy at law was sufficient to satisfy any requirement imposed under the Ninth Circuit's decision in *Sonner*).

Here, plaintiff has explicitly alleged that he lacks an adequate legal remedy as to his FAL claim. (Doc. No. 1 at ¶ 39); *see Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) (collecting cases finding that a plaintiff must at minimum plead a lack of adequate remedies at law). Plaintiff has further alleged that he lacks an adequate legal remedy because equitable relief is more "prompt and certain and in other ways efficient" than an award of damages. (Doc. No. 1 at ¶ 39.) Plaintiff alleged that equitable relief is appropriate because,

7

based on what must be shown to support a claim for damages, equitable restitution can justify an award of greater relief than damages and is governed by a different standard of proof that allows the award of restitution even if a plaintiff cannot adduce evidence to support an award of damages. (*Id.* at ¶¶ 39, 40.) Because plaintiff has alleged that he lacks an adequate legal remedy and, further, that the equitable remedy of restitution is more certain to provide him relief, plaintiff has adequately plead the lack of a legal remedy and satisfied *Sonner* at this stage of the litigation. (Doc. No. 1 at ¶ 39); *see also Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020) (holding that, under *Sonner*, a plaintiff may establish the lack of an adequate legal remedy by alleging such or by arguing that equitable remedies would be "more certain, prompt, or efficient" than legal remedies). The court therefore concludes that plaintiff has sufficiently alleged the availability of equitable relief.

### 2. Rule 9(b) Particularity

Defendant next argues that plaintiff's FAL claim is "grounded in fraud" and is therefore subject to Rule 9(b), but does not meet that heightened pleading standard. (Doc. No. 12-1 at 19–20.) Specifically, defendant contends that plaintiff has not identified what misrepresentations he encountered, or when and where he encountered them. (*Id.*) Plaintiff contends that his allegations are sufficiently detailed to meet the heightened pleading standard of Rule 9(b). (Doc. No. 16 at 15–16.)

The heightened pleading requirements of Rule 9(b) apply to claims brought in federal court under California's UCL. *Kearns*, 567 F.3d at 1127. Because plaintiff's UCL claim relies on the same factual allegations as his FAL claim, both are subject to the heightened pleading requirements of Rule 9(b). *See Kerkorian v. Samsung Elecs. Am., Inc.*, No. 1:18-cv-00870-DAD-SKO, 2019 WL 6918293, at *4 (E.D. Cal. Dec. 19, 2019) (finding that claims based on the same factual allegations as an intentional misrepresentation claim were "grounded in fraud" and subject to heightened pleading requirements); *see also Obertman v. Electrolux Home Care Prods., Inc.*, 482 F. Supp. 3d 1017, 1025 (E.D. Cal. 2020) (applying Rule 9(b) to a deceptive advertising claim brought under California's FAL).

/////

Under Rule 9(b), the "circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124 (internal quotations omitted) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word fraud is not used)." *Id.* (internal quotations omitted). To satisfy the particularity standard of Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quotation marks omitted) (quoting *Davidson*, 889 F.3d at 964). However, the rule "may be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

In its motion to dismiss based upon Rule 9(b)'s requirements, defendant focuses almost solely on its argument that plaintiff has specifically alleged only a single transaction where he purchased one of the Products – namely the 100% Mass Gainer protein powder. (Doc. Nos. 1 at ¶ 5; 12-1 at 19–20.) Defendant argues that plaintiff must specifically allege, among other things, the specific time and place where he encountered the labeling of each of the Products, what parts of each Product label he read, where he purchased each of the Products, and the specific name of each of the Products. (Doc Nos. 12-1 at 19–20; 17 at 10–12.) Defendant's argument in this regard is not persuasive.

A plaintiff need only allege who made a misleading statement, what that misleading statement was, when and where that misleading statement can be found, and how that statement was misleading. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (concluding that the Rule 9(b) standard does not require absolute particularity as to time frame or specific transactions); *Janney v. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013) (holding that the plaintiffs sufficiently pled a deceptive advertising claim by alleging that they purchased some of a product line and that the product line had a misrepresentation on its packaging).

9

1        In his FAC, plaintiff has alleged the "who, what, when, where, and how" required by Rule 9(b) with respect to the misleading representations defendant purportedly made. The "who" is alleged to be defendant. (Doc. No. 1 at ¶ 7.) The "what" is alleged to be the misleading representation that each of the Products contains a certain amount of protein. (*Id.* at ¶¶ 9, 10) (showing photos of each of the Products' representations of protein content); *see Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 914 (E.D. Cal. 2020) (finding sufficient particularity when the plaintiff's allegations included photos of the challenged products' packaging). The "where" is alleged to be on the packaging of each of the Products. (*Id.*) The "when" is alleged to have been around the fall of 2023, though plaintiff does allege that defendant's "wrongful conduct is ongoing" thereby implying that the Products' packaging continues to reflect the challenged misrepresentations. (*Id.* at ¶¶ 8, 37.) Plaintiff also explains "how" this representation is misleading by alleging that the Products only contain the advertised protein content per serving when combined with milk. (*Id.* at ¶ 10.)

        Additionally, contrary to defendant's contention, plaintiff clearly identifies the Products as being the "Muscletech" dietary supplements marketed and sold by defendant. (*Id.* at ¶ 1; Doc. No. 12-1 at 19.) Specifically, plaintiff identifies three products within that line and the alleged misrepresentations appearing on the packaging of those particular products. (*Id.* at ¶¶ 9, 10.)

        Accordingly, the court finds that plaintiff has alleged sufficient facts meeting Rule 9(b)'s heightened pleading standard with respect to his FAL claim.

        3.      Reasonable Consumer Test

        Defendant next argues that plaintiff has not sufficiently alleged facts that, if proven, would demonstrate that a reasonable consumer would be misled by the representations of protein content on the packaging of the products. (Doc. No. 12-1 at 15.) It contends instead that the disclaimer on the front of the packaging stating that the listed grams of protein are reached when the Product is mixed with a certain amount of skim milk, as well as the nutritional label appearing on the back of the packaging, prevent a reasonable consumer from being misled. (*Id.* at 15–16.)

        Plaintiff responds that the large font size representation of the Products' protein content is unambiguously deceptive. (Doc. No. 16 at 10–11) (citing *Nacarino v. KSF Acquisition Corp.*

1   ("*KSF*"), 642 F. Supp. 3d 1074 (N.D. Cal. 2022)).  Plaintiff alternatively argues that, even if the
2   representation as to protein content on the front label of the Products' packaging is ambiguous,
3   the disclaimers that defendant relies upon do not properly cure the ambiguity of the representation
4   made on the front label.  (Doc. No. 16 at 12–13.)  In its reply defendant contends that the cases
5   relied upon by plaintiff are inapposite because the packaging at issue in those cases either did not
6   disclose the need to add another ingredient or did not include the amount of added milk needed to
7   reach the represented protein content.  (Doc. No. 17 at 7–8.)

8         California's FAL prohibits "not only advertising which is false, but also advertising
9   which[,] although true, is either actually misleading or which has a capacity, likelihood[,] or
10  tendency to deceive or confuse the public."  *Williams*, 552 F.3d at 938 (internal quotation marks
11  omitted) (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002)).  "Claims under [the FAL] are
12  governed by the 'reasonable consumer' standard, which requires a plaintiff to 'show that
13  members of the public are likely to be deceived' by the defendant's marketing claims."  *Whiteside*
14  *v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024) (quoting *Williams*, 552 F.3d at 938).
15  The reasonable consumer standard requires a plaintiff to allege facts that, if proven, would
16  establish there is a non-negligible probability that a significant portion of reasonable targeted
17  consumers could be misled.  *Mars Petcare US, Inc.*, 966 F.3d at 1017.  "California courts have
18  observed that generally, 'whether a business practice is deceptive will usually be a question of
19  fact not appropriate for decision [at the pleadings stage]."  *Li v. Amazon.com Servs., LLC*, --- F.
20  Supp. 3d ---, 2024 WL 4336432, at *9 (W.D. Wash. 2024) (quoting *Whiteside*, 108 F.4th at 778)
21  (alteration in original).

22        Defendant does not dispute that the Products' packaging represents the protein content of
23  the Products when combined with milk, rather than the protein content of the Products
24  themselves.  (Doc. Nos. 12-1 at 15; 17 at 6–7.)  Instead, defendant contends that the asterisk
25  disclaimer on the front label is sufficient to dispel any confusion that a reasonable consumer may
26  have as to the protein content.  (*Id.*)  Plaintiff alleges that this disclaimer on the packaging is
27  buried and barely legible.  (Doc. No. 1 at ¶ 14.)  The issue before the court then is whether the
28  label of the Products, including the disclaimer, is likely to mislead a reasonable consumer.

11

1       After the pending motion to dismiss was filed, the Ninth Circuit has provided clarification
2   as to whether and how this issue involving use of asterisks on product packaging may be
3   addressed at the pleading stage. *Whiteside*, 108 F.4th at 785.  In *Whiteside*, the court explained:

> We reach the same conclusion even giving Plaintiff the benefit of the doubt that "70%+ by weight" is ambiguous.  If the statement were ambiguous, a reasonable consumer would require more information from the back label, and the back label clarifies that the Products contain both "natural and synthetic ingredients."  Even before reading the back label, *the presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats, making it unreasonable to assume that the Products were 100% plant-based. See, e.g., Bobo v. Optimum Nutrition, Inc.*, 2015 WL 13102417, at *5 (S.D. Cal. Sep. 18, 2015) ("Plaintiff cannot simply look to the statement on the front panel, ignore the asterisk, and claim he has been misled.").

*Id.* (emphasis added).[1]  In the time since the Ninth Circuit issued its decision in *Whiteside*, other courts have found that an asterisk appearing on the front label of a package or next to a potentially misleading representation creates an ambiguity such that a reasonable consumer would be expected to consider the back label to clarify that ambiguity.  *See Warren v. I-Health, Inc.*, No. 2:23-cv-01926-KJM-AC, 2024 WL 4368234, at *5 (E.D. Cal. Oct. 1, 2024) (finding that a statement on the front label which stated that the product would "rebuild bacterial balance lost to antibiotic use" with an asterisk was ambiguous due to the presence of the asterisk); *Cytryn v. Crumbl, LLC*, No. 23-cv-01218-MWF-KES, 2024 WL 4406924, at *4 (C.D. Cal. Aug. 23, 2024) (holding that the presence of an asterisk next to a product's calorie count on a webpage where the disclaimer was on that same page made it "unmistakably clear" that there was a caveat to the

---

[1] Plaintiff cites to decisions issued prior to the Ninth Circuit's decision in *Whiteside*, in which district courts had concluded that asterisks which led to disclaimers on the *side or back* labels of a product were not adequate to ameliorate the misleading nature of a representation appearing on the front label of a product.  (Doc. No. 16 at 6); *see Gatling-Lee v. Del Monte Foods, Inc.*, No. 22-cv-00892-JST, 2023 WL 11113888, at *10 (N.D. Cal. Mar. 28, 2023) (collecting cases concluding that it is a question of fact whether a reasonable consumer would notice an asterisk and follow it to a disclaimer); *KSF*, 642 F. Supp. 3d at 1085  (finding that a product's advertised amount of protein could be misleading when the requirement to add milk was in an asterisked disclaimer on the side of the product's packaging).  These decisions are inapposite, as in the present case the asterisked disclaimer appeared on the front label of the Products akin to the circumstances addressed by the Ninth Circuit.  *See Whiteside*, 108 F.4th at 784.

1  representation). The undersigned therefore concludes that the asterisk present on the front label
2  next to the representation of protein content creates an ambiguity that may be resolved by
3  considering the back label of the Products.²

4  Plaintiff alleges that each of the Products has a back label which displays a nutritional
5  information panel entitled "Supplement Facts." (Doc. No. 1 at ¶ 10.) Plaintiff further alleges
6  that, in the Supplement Facts, defendant discloses the fact that there is less protein content when
7  each of the Products is combined with water rather than with skim milk. (*Id.*) Defendant, in its
8  motion to dismiss, argues that the front of the package is clear that the protein content advertised
9  is only achieved by combining the Products with milk and that this is clearly stated on the back
10 label in the Supplement Facts as well. (Doc. No. 12-1 at 15–16.) The court finds, based on this
11 allegation, that even if plaintiff is given "the benefit of the doubt" that the disclaimer on the front
12 label is ambiguous, the back label clarifies that the protein content advertised on the front label
13 assumes that the Products will be combined with milk. *Whiteside*, 108 F.4th at 785. The court
14 therefore concludes that the asterisk, disclaimer, and back label Supplement Facts renders it
15 "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived."
16 *Williams*, 552 F.3d at 939.

17 Accordingly, the court will grant defendant's motion to dismiss plaintiff's claim brought
18 pursuant to the FAL.

19 **C.    Unfair Competition Law**

20 Defendant argues, as with plaintiff's FAL claim, that his UCL claim must be dismissed
21 because he has not alleged that he lacks an adequate remedy at law and therefore is not entitled to
22 equitable relief. (Doc. No. 12-1 at 11.) Defendant also contends that plaintiff has not sufficiently

---

² Plaintiff argues that even disclaimers which immediately follow a misrepresentation on a front label may fail to dispel the misrepresentation. (Doc. No. 16 at 6–7) (citing *Brown v. Nature's Path Foods, Inc.*, No. 21-cv-05132-HSG, 2023 WL 2699978, at *6 (N.D. Cal. Mar. 29, 2023) (holding that, in the context of a claim alleging a violation of 21 C.F.R. § 101.9's requirement that food labeling "prominently" state other ingredients typically combined with a food, an allegation that a disclaimer was insufficiently prominent was an issue of fact)). Plaintiff's argument is misplaced, however, because—in both his complaint and in his opposition to the pending motion—he explicitly does not rely on 21 C.F.R. § 101.9 in connection with his theory of misrepresentation. (Doc. Nos. 1 at ¶ 13; 16 at 14–15.)

alleged particular facts sufficient to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). (*Id.* at 18–20.) Defendant further argues that plaintiff has not alleged facts stating a cognizable claim for relief under the UCL because he has not adequately alleged that a reasonable consumer would be deceived by the Products' packaging. (*Id.* at 14–17.) The court will analyze each of these arguments below.

### 1. Availability of Equitable Relief

Defendant argues that plaintiff's UCL claim must be dismissed because he seeks only equitable relief and he has failed to allege a lack of an adequate legal remedy. (Doc. No. 12-1 at 12.) Plaintiff has alleged in his complaint that he lacks an adequate remedy at law because damages "are not equally prompt and certain" as equitable relief. (Doc. No. 1 at ¶ 56.) The court's analysis in this regard mirrors the analysis of plaintiff's FAL claim discussed above. Accordingly, the court concludes that plaintiff has sufficiently alleged the lack of an adequate legal remedy with respect to his UCL claim.

### 2. Rule 9(b) Particularity

Defendant next argues that plaintiff's UCL claim is "grounded in fraud" and is therefore subject to the heightened pleading requirements of Rule 9(b), but the allegations of his complaint as to this claim do not meet those heightened standards. (Doc. No. 12-1 at 19–20.) Plaintiff alleges the same misrepresentations by defendant in support of his UCL claim as he does in connection with his FAL claim. Therefore, for the same reasons explained above in finding plaintiff's allegations sufficient to satisfy Rule 9(b) as to his FAL claim, the court concludes that his allegations are also sufficient under Rule 9(b) as to his UCL claim.

### 3. Failure to State a Claim

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200 *et seq*. These three "prongs" each provide a distinct theory of liability and basis for relief. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *see also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Defendant moves for dismissal of the UCL claim arguing that plaintiff has not sufficiently alleged that a reasonable consumer would be misled by the Products' packaging.

14

(Doc. No. 12-1 at 15.) Neither defendant's nor plaintiff's briefing addresses the three prongs of the UCL or whether plaintiff has sufficiently alleged a UCL claim under one of those prongs. Nevertheless, because defendant has moved for dismissal of the UCL claim in its entirety, the court will analyze whether plaintiff has sufficiently asserted a UCL claim under each of the three prongs.

        a.    *Fraudulent Prong*

To advance a theory of fraud under the UCL, a plaintiff must allege facts showing that reasonable members of the public are likely to be deceived by the allegedly fraudulent conduct. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). "The challenged conduct 'is judged by the effect it would have on a reasonable consumer.'" *Id.* (quoting *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008)).

Plaintiff alleges in his complaint that defendant violated the UCL's proscription against fraudulent practices through the same purportedly misleading statements that his FAL claim is based on. (Doc. No. 1 at ¶ 54.) Because the court in addressing his FAL claim has concluded above that plaintiff has not alleged facts that, if proven, would show that a reasonable consumer would be misled by the Products' packaging, the court also concludes that defendant's packaging does not support a cognizable claim under the UCL's fraudulent prong. *Davis*, 691 F.3d at 1169 ("For the same reasons that we rejected Davis's FAL claim, we also conclude that the advertisements were not fraudulent under the UCL.")

        b.    *Unlawful Prong*

"To state a claim under the unlawful prong of the UCL, a plaintiff must plead: (1) a predicate violation, and (2) an accompanying economic injury caused by the violation." *Shelton v. Ocwen Loan Servicing, LLC*, No. 18-cv-02467-AJB-WVG, 2019 WL 4747669, at *10 (S.D. Cal. Sept. 30, 2019). "By proscribing any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011) (alterations and citations omitted). "Virtually any law—federal, state or local—can serve as a predicate for an action under [the UCL]." *Hadley*, 243 F. Supp. 3d at 1094 (quoting *Smith v.*

15

*State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001)).

Defendant contends that the UCL claim should be dismissed because plaintiff has not adequately alleged that a reasonable consumer is likely to be misled by the Products' packaging. (Doc. No. 12-1 at 15.)[3] In the present case, plaintiff has alleged that defendant violated the UCL's proscription against unlawful business practices by violating the FAL, the CLRA, and the Sherman Food, Drug, and Cosmetic Law ("the Sherman Law").  (Doc. No. 1 at ¶ 52.)  As explained above, the court will grant defendant's motion to dismiss plaintiff's claims brought pursuant to the FAL and CLRA.  The court must therefore determine whether plaintiff has alleged a predicate violation of the Sherman Law.

California's Sherman Law provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to [the Federal Food, Drug, and Cosmetic Act ("the FDCA")], in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state." Cal. Health & Safety Code § 110100.  To assert a violation of the Sherman Law then, a plaintiff must allege a violation of the FDCA or another FDA labelling regulation. *See Rausch v. Flatout, Inc.*, 660 F. Supp. 3d 855, 857 (N.D. Cal. 2023) (violations of FDA regulations violate California's Sherman Law because it incorporates the FDA's labelling regulations) (citing *Hadley*, 243 F. Supp. 3d at 1095).  In his complaint, plaintiff alleges that defendant violates the FDA regulation appearing at 21 C.F.R. § 101.13(i) by putting a false or misleading statement regarding the protein content of the Products on its labels. (Doc. No. 1 at ¶ 12.)[4]

To determine whether a defendant has violated 21 C.F.R. § 101.13(i), courts apply the reasonable consumer test. *See Hadley*, 243 F. Supp. 3d at 1100–01 (applying a reasonable

---

[3] The court notes that claims brought pursuant to the unlawful prong of the UCL are not always evaluated under the reasonable consumer standard, depending on the basis for the UCL claim. *Li*, 2024 WL 4336432, at *8 n.5 (finding that the reasonable consumer standard did not apply to UCL claim based on certain alleged violations of the Sherman Law).

[4] In his complaint, plaintiff also appears to suggest that defendant has violated 21 C.F.R. § 101.9(h)(4), but also concedes that the provision is inapplicable to this case.  (Doc. No. 1 at ¶ 13.)

consumer test in evaluating a Sherman Law claim brought to enforce 21 C.F.R. § 101.13(i)); *Kim v. Blue Triton Brands*, No. 2:22-cv-01907-JLS-KS, 2022 WL 17061085, at *6 (C.D. Cal. Nov. 1, 2022) (same) (citing *Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 (9th Cir. 2016)).  Because the court has concluded above that plaintiff has failed to allege facts that, if proven, would show a reasonable consumer would be misled by the Products' packaging, the court also concludes that plaintiff has not stated a cognizable claim that the Products' packaging is misleading under 21 C.F.R. § 101.13(i).

Therefore, the court finds that plaintiff has not alleged a violation of FDA regulations which would suffice to state a claim under the UCL's unlawful prong based upon a violation of the Sherman Law.  Accordingly, because plaintiff has not sufficiently alleged a predicate violation of any statute, no cognizable claim based on the UCL's unlawful prong has been stated.

          c.     *Unfair Prong*

In his complaint, plaintiff alleges that defendant's deceptive business model constitutes an unfair business practice because it leads consumers to purchase defendant's Products over comparable dietary supplements.  (Doc. No. 1 at ¶ 53.)

California courts employ three different tests in determining whether a business practice is "unfair" under the UCL:  the balancing test, the FTC test, and the public policy test.  *See Allen v. Hyland's, Inc.*, No. 12-cv-01150-DMG-MAN, 2016 WL 4402794, at *3 (C.D. Cal. Aug. 16, 2016), *rev'd in part on other grounds*, *Allen v. Hylands, Inc.*, 773 F. App'x 870 (9th Cir. 2019).  However, "regardless of the test, courts [in the Ninth Circuit] have held that where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive."  *Hadley*, 243 F. Supp. 3d at 1104–05 (collecting cases); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (same).  Because the court has concluded above that plaintiff has not stated a cognizable claim under either the fraudulent or unlawful prongs of the UCL, the court must also conclude that plaintiff has not stated a claim under the unfair prong of the UCL.

Accordingly, the court will grant defendant's motion to dismiss plaintiff's UCL claim.

17

**D.     Leave to Amend**

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Generally, dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citation omitted); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .").

In his opposition to the pending motion to dismiss, plaintiff requests leave to amend his complaint. (Doc. No. 16 at 19.) It is not clear that permitting plaintiff leave to amend to attempt to cure the pleading deficiencies of his FAC discussed above would be futile. For example, it is not evident from the complaint whether one of the variants of the Products lacks an asterisked disclaimer on its packaging. Moreover, in their pending motion, defendants do not argue that leave to amend should be denied. Therefore, the court will grant plaintiff leave to amend his complaint if he can do so in good faith.

## CONCLUSION

Accordingly,

1. Defendant's motion to dismiss plaintiff's complaint (Doc. No. 12) is granted with leave to amend; and
2. Within twenty-one (21) days from the date of entry of this order, plaintiff shall file either a first amended complaint or a notice of his intent not to do so.

IT IS SO ORDERED.

Dated:  **March 14, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE